# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Randy Jenkins, | ) | |
|               Petitioner, | ) | CV 11-472-TUC-RCC (JM) |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Craig Apker, et al., | ) | |
|               Respondents. | ) | |

Petitioner Randy Jenkins, an inmate in the custody of the Federal Bureau of Prisons, filed a *pro se* Amended Petition for Writ of Habeas Corpus (Doc. 13) pursuant to 28 U.S.C. § 2241.[1] Petitioner alleges that Respondents have violated the Constitution and several United States Statutes by refusing to recommend less than the full 12 month placement in a Residential Re-entry Center ("RRC"). The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 626(b)(1)(B) and Local Rule – Civil 72.1(b). As discussed below, the Magistrate Judge recommends that the petition be denied in part and granted in part and recommends that the District Court order that Respondents assist Petitioner in obtaining identification prior to his release.

**I.     Background**

Petitioner is serving a 90-month sentence followed by 3 years of Supervised Release following a conviction for Conspiracy in violation of 18 U.S.C. § 371, Securities Fraud and False Statement in violation of 5 U.S.C. § 78, Wire Fraud in violation of 18 U.S.C. § 1343,

---

[1] By Order dated September 13, 2011, the District Court dismissed Grounds Three and Four of the Amended Petition and ordered Respondents to respond to Grounds One and Two. (Doc. 18).

1 International Money Laundering and Concealing Money Laundering in violation of 18
2 U.S.C. § 1956, Transferring and Laundering in violation of 18 U.S.C. § 1957, and Forfeiture
3 in violation of 18 U.S.C. §§ 981 and 982 and 28 U.S.C. § 2461. *Answer*, Exhibit 1,
4 Attachment 1. Petitioenr is projected to complete his sentence on November 20, 2012 via
5 Good Conduct Time Release. *Id.*, Attachment 2.

6 Pursuant to the standards of the Second Chance Act of 2007 ("SCA"), the Bureau of
7 Prisons ("BOP") is required to consider prisoner placement in RRCs. The Act requires the
8 Director of the BOP "to the extent practicable, ensure that a prisoner serving a term of
9 imprisonment spends a portion of the final months of that term, not to exceed 12 months,
10 under conditions that will afford that prisoner a reasonable opportunity to adjust to and
11 prepare for the reentry of that prisoner into the community. Such conditions may include a
12 community correctional facility." 18 U.S.C. § 3624(c)(1).

13 On November 2, 2010, Petitioner's Unit Team completed a Inmate Skills
14 Development Plan that covered numerous vocational, career, educational, mental health and
15 daily living categories of information. *Id.*, Attachment 3. At the end of the Plan, the Unit
16 Team recommended "a 6-8 month RCC placement based on limited work experience as an
17 employee, [and] no current residence." The Team also noted that Petitioner "does not have
18 a substance abuse history & is highly educated." *Id*.

19 On April 19, 2011, Petitioner's Unit Team conducted another evaluation for RRC
20 placement. This time, the Unit Team recommended an RRC placement of 7-9 months "based
21 on homelessness, lack of marketable job skills, length of sentence and no prior history as an
22 employee." The Team also noted that Petitioner is facing the possibility of a large Internal
23 Revenue Service sanction and that "he has not had a U.S. drivers license since 1982."
24 *Answer*, Exhibit 1, Attachment 3.

25 On January 5, 2011, after first seeking Informal Resolution, Petitioner appealed the
26 initial decision in a Request for Administrative Remedy. *Id*, Attachment 3. He alleged that
27 the BOP had "failed to identify the criterion upon which the incentive of a maximum RRC

28

placement will actually be made based upon the separate and distinct criterion of reentry programming." *Id.* In response, Complex Warden Craig Apker noted that the Unit Team had based their recommendation on Petitioner's limited work experience and because he had no current residence, and informed Petitioner that, if he was dissatisfied with the response, he could appeal to the Wester Regional Director. *Id.*

Petitioner next filed a Regional Administrative Remedy Appeal alleging that the BOP, in determining his RRC placement, "failed to implement 42 U.S.C. [§] 17541 particularly (a)(1)(G); (a)(2)(A) & (B) as well as (b)(1) as it relates to assisting in inmates in obtaining identification." *Id.* In response, Regional Director Robert McFadden informed Petitioner in pertinent part that:

> The Bureau of Prisons utilizes Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure*, and the criteria set forth in the Second Chance Act of 2007, when considering RRC placement. * * * You have been advised by your Unit Team that you will be referred for a six to eight month RRC placement. The Unit Team has made an individualized determination regarding your RRC placement to address your transitional needs. The purpose of RRCs is to provide a transitional environment for inmates nearing the end of their sentences. They offer accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills. If you have concerns regarding your transitional needs, such as obtaining identification, we highly recommend that you begin by active participation in the Release Preparation Program (RPP) during the remainder of incarceration.

*Id.* The Regional Director concluded by noting his agreement with the Unit Team's determination and the Warden's response and informing Petitioner of his right to appeal the decision to the Office of the General Counsel of the Bureau of Prisons. *Id.*

On March 28, 2011, Petitioner filed a Central Office Administrative Remedy Appeal alleging that the Regional Director's decision was "a lame bureaucratic response," and characterizing the central issue as BOP's inaction to formulate incentives as required by the Second Chance Act. *Id.* In response, Harrell Watts, Administrator of National Inmate Appeals wrote, in pertinent part that:

> Inmates are considered [for RRC placement] on an individual basis for pre-release community confinement in a manner consistent with the five-factor criteria established at 18 U.S.C. § 3621(b) that include the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, any statement by the court that imposed the sentence, and any pertinent policy statement issued by the U.S. Sentencing Commission. Additionally, determinations are based on the individual's needs, existing community resources, institutional adjustment, length of sentence, and the need to provide for the safety and security of the general public. No inmate is entitled to either RRC placement or placement of a particular duration.

*Id*. The National Administrator then found that Petitioner's RRC placement needs were assessed by the Unit Team "in a manner consistent with the requirements of the Second Chance Act of 2007, Public Law 110-199, and 28 C.F.R. Part 570," and the appeal was denied. *Id.*

**II.     Discussion**

    **A.     Exhaustion**

Petitioner has exhausted his administrative remedies by filing appeals at the local, regional and national levels. *See* Exhibit 1, Attachment 4 and discussion above.

    **B.     Merits**

        **1.     RCC Placement**

To be entitled to habeas relief, Petitioner must show that "[h]e is in custody in violation of the Constitution or laws or statutes to the United States." 28 U.S.C. § 2241(c)(3). Petitioner's primary arguments are directed at Respondents' decision to recommend that he be placed in a RRC for 7 to 9 months rather than the maximum 12 months. That decision was prompted by 18 U.S.C. § 3624(c) which requires that "[t]he Director of the Bureau of Prisons . . . to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) . . . that will afford that prisoner a reasonable opportunity . . . of reentry of that prisoner into the community. Such conditions may include a community correctional

facility."  In implementing this statute, the BOP is to apply the five factors identified in 18 U.S.C. § 3621(b).  That statute, in relevant part, provides:

> (b) Place of imprisonment.– The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meet minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
>
> (1)  the resources of the facility contemplated;
>
> (2)  the nature and circumstances to the offense;
>
> (3)  the history and characteristics of the prisoner;
>
> (4)  any statement by the court that imposed the sentence–
>
> > (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> >
> > (B)  recommending a type of penal or correctional facility as appropriate; and
>
> (5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*Id.*

In his criticism of the application of these factors in his case, Petitioner notes a since terminated policy of the BOP to cap RRC placement at six months. *Memorandum,* pp. 13-14.  Petitioner contends that the policy, despite its termination, has become habit and he was effectively denied an individualized determination that, he asserts, would have resulted in "inmates like Jenkins the full benefits of 12 months RRC placement . . . ." *Id.* at 17. Petitioner then outlines the factors identified in section 3621(b) and explains how he satisfies them.

As a threshold matter, the Petitioner's Unit Team recommended an RRC placement of 7-9 months and not the 6 months Petitioner suggests.  In reaching this determination, the BOP was obligated to act in good faith in the proper exercise of its discretion. *Rodriguez v.*

*Smith*, 2007 WL 628663 (E.D.Cal. Feb. 28, 2007), *aff'd* 541 F.3d 1880, 1887 (9th Cir.2008). There is nothing in the record that suggests that the BOP failed on this account.

Although the material submitted by Respondents does not identically mirror the provisions of section 3621(b), it does reflect that Petitioner was evaluated at length, particularly in relation to factor three, the history and characteristics of the prisoner. In the Unit Team's recommendation, several factors supporting the 7-9 month RCC placement were listed. These included Petitioner's homelessness, his lack of marketable job skills, the length of his sentence, the lack of prior history as an employee, a large Internal Revenue Service sanction and that he did not have a driver's license. *Answer*, Exhibit 1, Attachment 3. These categories reflect that his history and characteristics were considered and are supported by the Inmate Skills Development Plan that is also in the Petitioner's file.

As to the remaining factors of section 3621(b), even Petitioner recognizes their marginal relevance to his case. Petitioner argues that an RCC facility or halfway house should be available. Respondents have not contended otherwise. As to the nature of his offense, Respondents have considered only the length of his sentence, and have not suggested that the offense involved violence or that he is predisposed to act in a violent manner. In relation to the final two factors, statements by the sentencing court and the sentencing commission, neither side offers any information to be considered. Thus, the BOP's reliance on Petitioner's history and characteristics is hardly a surprise.

The legal basis for Petitioner's claim is the final and most important consideration in rejecting this claim. This Court and others have previously cited a Report and Recommendation drafted by then District of Arizona Magistrate Judge (now District Judge) Guerin, where in a claim much like this one, she reasoned that:

> The SCA does not mandate a RCC placement of 12-months or prohibit a placement of less than 12-months. *See* 18 U.S.C. § 3624(c); *Roman v. Berkebile*, 2008 WL 4559825 at *2 n. 2 (N.D.Tex. Oct. 6, 2008) (prisoners may receive a maximum of 12 months under the Second Chance Act, but there is no presumptive minimum). Although Petitioner may understandably believe that a longer RRC placement would benefit him, a petitioner "is not entitled to a writ of habeas

6

> corpus simply because he thinks the Bureau of Prisons misjudged his situation and made a bad decision about when he should be transferred to an RRC." *Segovia-Reyna v. Cruz*, 2009 WL 279482 (D.Minn. 2009). The SCA only requires that the BOP consider an inmate for RRC placement; it does not mandate that the inmate actually get such placement. *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168 (10th Cir.2007). In sum, an inmate is entitled to a good faith and proper exercise of discretion by the BOP. *Rodriquez v. Smith*, 2007 WL 628663 (E.D.Cal. Feb. 28, 2007), *aff'd* 541 F.3d 1880, 1887 (9th Cir.2008). [The Petitioner] has failed to demonstrate that the BOP failed to properly exercise its discretion in this matter.

*Bruce v. Apker*, 2009 WL 2509170 (D.Ariz. Aug. 17, 2009). As discussed above, Petitioner has not established that the BOP filed to properly exercise its discretion in this case and the law does not support granting him relief on this claim.

### 2. Identification Assistance

In Ground Two of the Petition, but not in the accompanying Memorandum, Petitioner argues that Respondents have failed to assist him in the acquisition of identification documents. He also raised this issue in his Regional Administrative Remedy Appeal, noting that the BOP had failed to follow the provisions of 42 U.S.C. § 17541 "as it relates to assisting inmates in obtaining identification."

The provision of section 17451 upon which Petitioner relies is mandatory, stating that "[t]he Director shall assist prisoners in obtaining identification (including a social security card, driver's license or other official photo identification, or birth certificate) prior to release." 42 U.S.C. § 17541(b)(1). Respondents have not addressed Petitioner's assertion that the BOP has failed to assist him as required by this section and have left Petitioner's contention unrebutted. As such, the Court recommends that the Respondents and the BOP provide Petitioner with the assistance required pursuant to the statute.

### III. Recommendation for Disposition by the District Judge

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **grant in part and deny in part** Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 13) and order that Respondents assist Petitioner in obtaining identification prior to his release.

7

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 11-472-TUC-RCC**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 21st day of March, 2012.

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge

8